# EXHIBIT A

Samuel C. Straight (7638)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: sstraight@rqn.com

*Attorney for Plaintiff Young Living Essential Oils, LC*

IN THE THIRD JUDICIAL DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| YOUNG LIVING ESSENTIAL OILS, LC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TITAN COLD STORAGE, INC., a California Corporation,<br><br>Defendant. | **COMPLAINT**<br><br>**TIER 2**<br><br>Case No. _____<br><br>Judge : _____ |

Plaintiff Young Living Essential Oils, LC ("Plaintiff" or "Young Living"), by and through its counsel of record, files this complaint against Defendant Titan Cold Storage, Inc. ("Defendant" or "Titan"), and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Young Living is a Utah limited liability company that maintains its principal place of business in Utah County, State of Utah.

2. On information and belief, Defendant Titan is a California Corporation with a principal place of business in Los Angeles County, California.

3. This Court has subject matter jurisdiction over Young Living's claims for relief pursuant to Utah Code Ann. § 78A-5-102.

4. Venue of the above-captioned case is proper in this Court pursuant to Utah Code Ann. § 78B-3-304 and 78B-3-307 as the obligations under the contract at issue were to be performed in Salt Lake County, Utah and the cause of action arose in Salt Lake County, Utah.

**GENERAL ALLEGATIONS**

5. Young Living is in the business of selling essential oils and other health and nutritional products.

6. Titan is engaged in the business of storing goods in cold storage for hire and maintains a warehouse in Salt Lake City.

7. Young Living contracted with Titan to store its Ningxia Red juice ("Juice") in Titan's Salt Lake City warehouse.

8. The Juice was stored in drums that the parties agreed Titan would maintain frozen.

9. The only documents the parties exchanged at any time consisted of invoices from Titan to Young Living.

10. None of the relevant invoices contained any purported terms and conditions.

11. Young Living never acknowledged any purported terms and conditions.

12. Titan never discussed the terms of any purported Contract with Young Living.

13. Titan never mentioned the existence of a written agreement until it disavowed liability.

14. On March 18, 2020 an earthquake with an epicenter near Magna, Utah was felt widely in the Salt Lake valley.

15. Titan's facilities manager, Kaye Reese, emailed staff at Young Living on March 19, 2020, to notify them that the drums had been stacked on top of each other on faulty pallets and that as a result, Young Living's drums fell and were destroyed during the earthquake.

16. Kaye Reese also explained that Titan did not have a count on the damaged drums but would have Utah Disaster Kleenup go to the facility the next day and "sort out the damaged drums."

17. Kaye Reese promised to "get back with [Young Living]" once she had a total count.

18. In the subsequent weeks, Young Living waited for Titan to provide details and photographs of the damaged Juice, as well as information about reimbursing Young Living for the cost of replacing the Juice.

19. At all times, Young Living worked with Titan amicably and in good faith, despite multiple delays by Titan.

20. Young Living answered all of Titan's questions.

21. Young Living gave Titan a reasonable opportunity to inspect the goods.

22. On April 1, 2020, thirteen days after Young Living discovered that its Juice was destroyed, Paul Hansen, Young Living's Executive Director of Global Quality sent Kaye Reese and Andrew Marsh at Titan a written notice of claim through an email which stated that absent finding any use for the spilled Juice, Young Living would like to just "write the materials off and collect the insurance."

23. Then finally, on April 16, 2020, almost a month after the earthquake, Kaye Reese informed Young Living that a total of 138 drums had been "destroyed and disposed of."

24. Titan provided Young Living with an Inventory Report identifying the drums destroyed in the earthquake.

25. All of the damaged drums arrived at Titan's facility in the year 2020.

26. Kaye Reese further explained that Young Living could "send the billing to [her] e-mail and [she would] forward it to the proper department."

27. As a result of the damage, it cost Young Living $207,450 to replace the Juice.

28. The drums were the only goods in Titan's facility that were damaged during the earthquake.

29. On June 3 and 5 of 2020, Young Living reached out through email to inquire again about how Titan would reimburse Young Living for the cost of replacing the Juice.

30. Young Living specifically asked Titan if it had been able to file an insurance claim on the damaged drums.

31. Titan continued to string Young Living along for weeks. Kaye Reese promised to forward Young Living's requests to its Vice President Carel Els to resolve the matter. However, all that resulted was Titan requesting more information for reimbursement, including a breakdown of the damages calculation.

32. Titan reached out to Young Living supposedly to implement the mechanics of Titan's reimbursement to Young Living.

33. After answering all of Titan's questions, on June 8, 2020, 81 days after it learned its drums had been damaged; Young Living received an e-mail from Carel Els disavowing all responsibility for any damage to the drums.

34. Carel Els based his conclusion on an alleged agreement between the two parties titled "Titan Cold Storage: Contract Terms and Conditions" ("Contract") located on the back of Titan's invoices to Young Living. Specifically, he explained:

> ... [I]n events beyond our control such as the earthquake that caused the destruction of your product we have to rely on our Contract Terms and Conditions that are agreed upon at delivery of product to our facility. I would like to refer you to Section 9 of our Contract Terms and Conditions (See attached). In summary: this section clearly states that Titan Cold Storage shall not be liable for any loss, damage or destruction of goods that could not have been avoided.

35. However, this Contract was not located on the back of the relevant invoices that Titan emailed to Young Living.

36. Only after disavowing liability did Titan emailed Young Living a copy of the purported Contract.

37. This was the first time Titan made any indication that it would not pay Young Living for the damages.

38. It was also the first time Young Living was made aware of any terms and conditions.

39. On June 29, 2020, Young Living sent a letter to Carel Els in response. The letter demanded that Titan reimburse Young Living for the damages and noted that Titan failed to explain how it exercised reasonable care as required under the purported Contract.

40. On July 2, 2020, Titan's attorney, Clay Lorinsky of Lorinsky & Associates Inc. replied to Young Living's letter once again disavowing liability.

41. As a result, Young Living filed this lawsuit to recover its damages.

## FIRST CLAIM FOR RELIEF
**(The Contract is unenforceable because it was not located on the back of the relevant invoices and alternatively, even if it was, it was inconspicuous and hence, Young Living did not assent to its terms.)**

42. Young Living incorporates herein by reference all previous paragraphs of this Complaint.

43. None of the invoices for the damaged drums contained a Contract on the back.

44. As a result, Young Living did not assent to the terms of the purported Contract.

45. Alternatively, even if the Contract was located on the back of the invoice, it was in small and light gray print that was barely visible.

46. The front of the Invoices did not conspicuously explain that they contained any purported Contract on the back.

47. The invoices only contained a reference to the Contract in very small print at the end of the invoice.

48. The invoices did not contain any reference to other documents that may have contained the purported Contract.

49. Young Living did not have to sign the invoice at any time.

50. No single term was ever negotiated.

51. Titan did not call to the attention of Young Living the terms the Contract.

52. As a result, Young Living did not assent to the terms of the Contract.

53. Therefore, Young Living is entitled to declaratory relief establishing the purported Contract is unenforceable.

## SECOND CLAIM FOR RELIEF
### (Breach of duty of care pursuant to Utah Code Ann. § 70A-7a-204(1))

54. Young Living incorporates herein by reference all previous paragraphs of this Complaint.

55. Titan is a warehouse as defined under Utah Code Ann. § 70A-7a-102(1)(m).

56. Titan owes Young Living a duty to exercise the care that a "reasonably careful person would exercise under similar circumstances" pursuant to Utah Code Ann. § 70A-7a-204(1).

57. Titan breached that duty of care by improperly stacking the drums of Juice.

58. Titan breached that duty of care by maintaining the drums of Juice on faulty pallets.

59. Titan also breached its duty of care by failing to adequately freeze the Juice.

60. As a result of Titan's breach, the Juice was destroyed.

61. But for Titan's breach, Young Living's Juice would not have been destroyed.

62. The destruction of Young Living's Juice would have been avoided had Titan exercised reasonable care.

63. As a result of Titan's breach, Young Living has incurred $207,450 in damages associated with replacing the lost Juice.

## THIRD CLAIM OF RELIEF
### (Breach of Contract)

64. Young Living incorporates herein by reference all previous paragraphs of this Complaint.

65. Alternatively, in the event the Contract is found to be enforceable, Titan has breached the terms of the Contract.

66. Young Living submitted a timely claim to Titan pursuant to the Contract.

67. Young Living has filed this complaint within 9 months of learning of the damages pursuant to the Contract.

68. Young Living provided Titan with a reasonable opportunity to inspect the goods pursuant to the Contract.

69. The Contract provides that Titan will be liable for any "loss, damage or destruction result[ing] from [Titan's] failure to exercise such care in regard to the GOODS as a reasonable careful man would exercise under like circumstances" ("duty of care").

70. Titan breached its contractual duty of care by improperly stacking the drums.

71. Titan breached its contractual duty of care by maintaining the drums on faulty pallets.

72. Titan breached its contractual duty of care by failing to adequately freeze the Juice.

73. The destruction of Young Living's Juice would have been avoided had Titan exercised reasonable care.

74. As a result of Titan's breach, Young Living has incurred $207,450 in damages associated with replacing the lost Juice.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Young Living respectfully prays for judgment in its favor, and against Defendant Titan, as follows:

A.  ON ITS FIRST CAUSE OF ACTION, for declaratory relief establishing the purported Contract as unenforceable.

B.  ON ITS SECOND CAUSE OF ACTION for judgment in amount of at least $207,450 as of March 18, 2020, together with interest until paid in full, plus costs and attorneys' fees to the extent permitted by law or contract, and the additional relief prayed for below.

C. ON ITS THIRD CAUSE OF ACTION, for judgment in amount of at least $207,450 as of March 18, 2020, together with interest until paid in full, plus costs and attorneys' fees to the extent permitted by law or contract, and the additional relief prayed for below.

D. For its reasonable attorney fees and costs, pursuant to the Contract and Utah Code Ann. § 78B-5-826.

E. For such other and further relief as the Court finds just and proper.

DATED: 21st day of August, 2020.

RAY QUINNEY & NEBEKER P.C.

*/s/ Samuel C. Straight*
Samuel C. Straight
*Attorney for Young Living Essential Oils, LC*